## VON QUIRAM v CLEVELAND (city)

Ohio Appeals, 8th Dist, Cuyahoga Co
No 10440. Decided April 28, 1930

John H. McNeal, Cleveland, for Von Quiram.

Walter Booth, Cleveland, for City.

VICKERY, PJ.

There is practically only one question for us to consider in this lawsuit and that is: Is the verdict so inadequate that the court should grant a new trial for that reason? It is a well settled doctrine that a court has just as much power to set aside a judgment because of its inadequacy, as it has because of its excessiveness. I do not believe that anybody will seriously question this propostion.

Now, in this case the plaintiff offered evidence of photographs and her testimony and that of her daughter and perhaps others, that there was a defect in the sidewalk and that it had been there long enough so that the City had at least constructive notice of its defective condition. There can be no question but that a City is liable for injuries which result from defects in sidewalks or in streets where it has caused the defect or where it has had actual notice, or where the defect has existed long enough so that by the exercise of ordinary care it should know of its existence or have what is known as constructive notice.

The City offered no evidence to show that this defect did not exist or that it was of such a character that it would excuse it from having constructive notice, nor is there any evidence to show that it did not exist there as long as the plaintiff said it did. That being so, if this woman fell on that defective sidewalk and injured herself, she was entitled to a verdict in her favor.

Now then, the amount of the verdict would depend upon the seriousness of her injury. The evidence in this case shows, and it is admitted in court, that this woman had a rupture and that she injured her ankle and her knee and other parts of her body; that she had fallen away in weight very materially and that she is more or less crippled permanently from this injury.

The record in this case shows that after this injury she had a hernia or rupture and both she and her daughter testified that she did not have it before. The evidence in this record shows that hernia may come from trauma when the blow is inflicted upon the place where the hernia develops. There is evidence in this record to show that this woman fell on a jagged or protruding curbstone and that she fell hitting her groin on the sharp edge of this curbstone, and that she immediately called a doctor and was under a doctor's ministrations, and that the doctor testified that within two or thre days there was a hernia developed in this woman.

Now; that taken with the testimony of the mother and daughter makes it pretty nearly conclusive that this hernia resulted from this fall. It is argued that from the way in which this woman says she fell, the hernia could not have been caused from the fall. One does not know what may happen when a person falls. One does not know what strain might be brought upon a

person. One does not know just how a person strikes and it is difficult for a person to describe afterwards just how the fall affected him.

It is claimed that she injured her ankle and her hand. Now, there is nothing in this record to show that this woman was malingering. The doctors testified that this woman was suffering and had suffered from the injury she claimed. If, as the evidence shows, this woman had a hernia and that it was caused by this fall, as well as the other injuries which she claims to have sustained, one cannot account for the smallness of this verdict unless the passion and prejudice of the jury were aroused against her; and there is a line of questioning from which there would be insinuations against the daughter of the plaintiff which could not hlep but mislead or confuse the jury and perhaps arouse their prejudice against the mother. Of course, if all the insinuations that were contained in the questions about the daughter were true, it would not affect the mother's claim. True, the City had a right to introduce evidence which would tend to lessen the credibility of the daughter, but the asking of question which would insinuate that a certain thing exists without showing that it did exist, can have only one purpose, and that is to inflame the jury against the plaintiff because of her daughter, her principal witness.

While there must be a large latitude allowed attorneys on cross examination of witnesses, yet we think it must be kept within bounds, and to insinuate by questions acts which could not be proven, or at least which it was not sought to prove in this case, could only tend to inflame the jury to show that the daughter perhaps might have been a malingerer and, ergo, the mother must be so too, and that could be the only basis on which this verdict could have been rendered when it is admitted in this case that this woman was entitled to a verdict; because inasmuch as the City did not dispute the question of liability, from the evidence in this case she was entitled to a verdict and judgment on the verdict, which would fairly compensate her for the injuries she received.

Reading this whole record, we do not think that the record would bear out that she did receive adequate compensation.

Now we think this judgment was rendered in the small amount that it was through passion and prejudice engendered, perhaps, by calling attention to the daughter, whereupon the mother had to suffer for it.

We think on the whole record that this plaintiff was entitled to a substantial verdict, and while we have repeatedly reversed cases because the verdict has been excessive, we claim the right and power to reverse because of inadequacy of the verdict, and we think this verdict was wholly and entirely inadequate for the injuries this record shows this woman received in this injury, and the judgment will be reversed because of its inadequacy and the cause remanded to the Common Pleas Court for a new trial.

Sullivan and Levine, JJ, concur.